UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALBERT REGINALD ROBINSON,

        Plaintiff,

v.

UNKNOWN KILLIPS et al.,

        Defendants.
_____/

Case No. 2:17-cv-00098

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer Unknown Killips and Sergeant P. Thompson.

Plaintiff alleges that he has worked for the URF small yard crew since October of 2014. Plaintiff's current supervisor is Defendant Killips, and his supervisor is Defendant Thompson. Plaintiff states that in the past, he filed two grievances about his pay, which were resolved. Plaintiff claims that he worked 29 days between May 19, 2016, and June 18, 2016, which included 26 days for Defendant Killips and 3 days for Marty Terrion, the Horticulture Supervisor. However, Defendant Killips insisted that Plaintiff had only worked 24 days for him. Plaintiff attempted to get Defendant Killips to pay him what he was owed, to no avail. Defendant Killips told Plaintiff that if he filed a grievance, he would give him a ticket for being out of place when Plaintiff tried to check in for overtime. Prior to this, Plaintiff had been working overtime on a regular basis.

On July 4, 2016, Defendant Thompson interviewed Plaintiff on his grievance regarding payment for his job. Defendant Thompson refused to listen to Plaintiff's claims and told Plaintiff that if he wanted to file grievances, he would make sure to take more money from Plaintiff's pay. Defendant Thompson also told Plaintiff that he would not be given any overtime. On July 5, 2016, Plaintiff asked Defendant Killips to pay him what he was owed, but Defendant Killips refused. Plaintiff claims that the July 6, 2016, payroll was not correct. On July 10, 2016, Defendant Killips told Plaintiff, "You can't work overtime, take it in." On July 17, 2016, Defendant Killips again told Plaintiff that he could not work overtime and that he should "go write a grievance about that." On July 25, 2016, Defendant Thompson repeated to Plaintiff that he could

not work overtime. Plaintiff states that he has not worked since June 30, 2016, and that yard workers are paid five days per week, whether they work or not.

Plaintiff states that Defendant Killips is supposed to use a check-in sheet to keep track of workers as they arrive and leave work, but that he does not use the sheet, so there is no way to prove that Plaintiff is telling the truth. Plaintiff claims that Defendant Killips provided false information regarding the hours that Plaintiff worked in response to his grievance. Plaintiff also claims that Defendant Killips paid a white inmate overtime wages for working regular hours.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

3

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially the Court notes that the refusal to allow Plaintiff to work overtime does not constitute a violation of his constitutional right of due process under the Fourteenth Amendment. Procedural due process claims require resolution of two questions:

> [T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *Hewitt v. Helms*, 459 U.S. at 472.

*Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

Generally speaking, a protected interest exists if the individual has a legitimate claim of entitlement to it. *Id.* The interest at issue here is whether Plaintiff, a prisoner, had an entitlement to continued prison employment in the absence of just cause for discharge. Plaintiff

has no inherent constitutional right to rehabilitation, education, job assignments, or other programming. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newsom v. Norris*, 888 F.2d 371, 374-75 (6th Cir. 1989); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980).

Nor does state law create such an entitlement. Michigan's statutes and regulations give prison authorities complete discretion regarding programming assignments of prisoners. Michigan does not have statutes or administrative rules restricting the discretion of its prison administrators concerning such decisions. Under Michigan Department of Corrections regulations, prison authorities retain broad discretion regarding the assignment of prisoners to rehabilitative programs and work assignments. *See* Mich. Dep't of Corr., Policy Directives 05.01.100 and 05.02.112.

Accordingly, since Plaintiff did not have a liberty interest in his job assignment, the Due Process Clause was not implicated by the denial of overtime work, with or without cause.

Moreover, Plaintiff's due process claim regarding the alleged discrepancy in his pay is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468

U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Plaintiff filed a grievance in this case, and he attaches copies of his step I and II grievances and responses to the complaint. *See* ECF No. 1-2, PageID.17-PageID.22. According to the step I response by Defendant Thompson:

> Prisoner Robinson did work the month of May 15 days. He was not working as Yard Crew as of 5/25/16 so he does [sic] not owed any pay as a yard crew worker. This was explained to prisoner Robinson that he would be paid from his horticulture assignment. He was not satisfied and wanted the grievance sent to Step II. Not resolved.

*Id.* at PageID.17. The response was reviewed by Lieutenant T. Derusha. *Id.*

The step II response by Warden Jeffrey Woods states:

> This Step II Respondent interviewed the Classification Director who reviewed the grievant's payroll for May 19-June 18. Records show the prisoner worked 19 days in yard crew and 5 days in Horticulture (2 more than the grievant states). There was no overtime scheduled for yard crew workers during that pay period due to the dryness and lack of grass needing to be cut. The grievant was paid $28.50 which is for 25 days total and should have only been paid for 24. No violation of policy exists.

*Id.* at PageID.22.

The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed

6

dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, Plaintiff's due process claim is properly dismissed.

Plaintiff claims that the denial of his ability to work overtime was motivated by a desire to retaliate against him for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With regard to whether or not Defendants took a sufficiently adverse action against Plaintiff, the Court notes that in *Davis v. Walton,* No. 1:12-CV-258, 2014 WL 320206 (W.D. Mich. Jan. 29, 2014), the district court explained that the prisoner plaintiff's failure to receive the prison job of his choice was a routine inconvenience of prison life that would not deter a person of ordinary person from engaging in protected conduct:

7

> Prison employment is not employment in the ordinary sense, but represents a part of the rehabilitation program of the prison. The incidents described in this record are routine aspects of prison life. It trivializes the concept of First Amendment retaliation—which was fashioned by the Supreme Court and the Sixth Circuit to assure vindication of prisoner's free-speech rights—to allow dissatisfaction over a prison work detail to qualify as an adverse action sufficient to support a constitutional tort.

*Id.; see also Colvin v. Foy,* No. 1:13-CV-465, 2014 WL 1154658, at *3 (W.D. Mich. Mar. 21, 2014) (denial of a prison job did not constitute adverse action because the denial did not deter the prisoner from engaging in the protected activity of filing grievances); *Cohron v. City of Louisville,* No. 3:06-CV-P570-C, 2010 WL 1049975, at *3 (W.D. Ky. Mar. 19, 2010) (inmate's removal from the work list did not constitute an adverse action for purposes of a retaliation claim); *Neal v. Nomack,* No. 2:09-CV-12859, 2010 WL 3277863, at *4 (E.D. Mich. July 9, 2010) ("[E]ven if plaintiff's loss of his prison job because of the transfer impaired his ability to pursue his medical malpractice claim, such an adverse consequence does not implicate his constitutional right of access to the courts."); *Umani v. Caruso,* No. 2:07-CV-10649, 2008 WL 2216283, at *14 (E.D. Mich. May 27, 2008) (granting defendant's motion for summary judgment regarding prisoner's retaliation claim based on the loss of his prison job because "loss of a job would not deter a person of ordinary firmness from continuing to file grievances.").

For the reasons stated above, Plaintiff's retaliation claim lacks merit because the refusal to allow Plaintiff to work overtime does not constitute an adverse action that would deter a person of ordinary firmness from engaging in protected conduct. Therefore, Plaintiff's retaliation claim is properly dismissed.

Finally, Plaintiff claims that Defendant Killips paid a white inmate overtime wages for working regular hours during the same time period that Plaintiff was being denied overtime work. Plaintiff, who is black, claims that this shows that Defendant Killips' refusal to allow him

to work overtime was motivated by a desire to discriminate against him on the basis of his race. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose in refusing to allow Plaintiff to work overtime. *See id.* at 458. Moreover, Plaintiff fails to allege a prima facie claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under the *McDonnell Douglas* test, a plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment decision; and (4) he

9

was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *See Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (internal quotations omitted). To be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992). Plaintiff's only allegation in support of his equal protection claim is that Defendant Killips paid a white inmate overtime for work that was not subject to overtime pay. Plaintiff's claim that he was denied the opportunity to work overtime does not appear to be comparable to this allegation in any way. Because Plaintiff has failed to allege facts showing that he and the white prisoner were similarly situated, his equal protection claim is properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 28, 2017                    /s/ Gordon J. Quist
                                          GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE