UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALBERT REGINALD ROBINSON #602273,   Case No. 2:17-cv-00098

        Plaintiff,   Hon. Gordon J. Quist
                                  U.S. District Judge

v.

UNKNOWN KILLIPS, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

This is a civil rights action brought by state prisoner Albert Reginald Robinson pursuant to 42 U.S.C. § 1983.  Robinson says that while he was confined at the Chippewa Correctional Facility, Defendants retaliated against him, in violation of the First Amendment, and denied him equal protection of the law, in violation of the Fourteenth Amendment.

After Robinson filed his complaint in May of 2017, the Court issued an opinion and judgment on November 28, 2017, dismissing the case.  (ECF No. 5.)  Robinson appealed the judgment to the Sixth Circuit Court of Appeals.  On September 11, 2018, the Sixth Circuit partially vacated the judgment and remanded Robinson's retaliation and equal protection claims.  (ECF No. 18.)

Robinson alleges that he was denied pay while working for URF's small yard crew during the pay period that began on May 19, 2016, and ended on June 18, 2016.

(ECF No. 1, PageID.4.) Specifically, Robinson says Defendant Paul Killips paid him for only 24 days when he worked 26 days for Defendant Killips. Robinson says that he spoke to Killips several times after the end of the pay period to obtain pay for the days for which he had not received pay. (*Id*.) Robinson alleged that he filed a grievance on Killips on June 20, 2016. (*Id*.) Robinson alleged that, on June 21, Killips told Robinson, "if you file a grievance I'll give you a ticket for being out of place when you try to check-in for overtime." (*Id*.) Robinson said he had been working overtime since 2014. (*Id*., PageID.5.)

Robinson then alleges that Defendant Thompson interviewed him on the grievance on July 4, 2016. (*Id*.) Robinson says that Thompson said, "you want to file grievances I'll make sure to take more money from your pay" and "no overtime." (*Id*.)

Robinson also alleges that Killips told him on July 10, 17 and 26, 2016, that he would receive no more overtime. (*Id*.)

Finally, Robinson asserts that his rights under the equal protection clause of the Fourteenth Amendment were violated because Inmate Pelton, who is white, was allowed to work over-time "around the month of June 2016." (*Id*., PageID.6.)

Defendants Killips and Thompson filed a motion for summary judgment. They assert that Robinson has failed to exhaust his administrative remedies. (ECF No. 41.) Robinson has responded, and Defendants have replied. (ECF Nos. 43, 45.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motion for summary judgment and dismiss the complaint against them.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

3

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

4

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.

5

*Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

7

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[1], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

---

[1] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### V. Plaintiff's Claims

Plaintiff's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Retaliation: denial of overtime work after pursing a grievance. (ECF No. 1, PageID.4-6; , 8; ECF No. 18, PageID.95.) | Killips and Thompson. | July of 2016. |
| Equal protection: refusing to pay and | Killips and Thompson. | May to July of 2016. |

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| provide overtime work while a white co-worker received overtime pay. (ECF No. 1, PageID.6, 8; ECF No. 18, PageID.94.) | | |

### VI. Grievance URF-16-06-2387-02c

Records provided by Defendants indicate that Robinson pursued eleven grievances through Step III of the MDOC grievance process while at URF between May and August of 2016. (ECF No.42-2, PageID.249-252.) However, only **Grievance URF-16-06-2387-02c** appears to be relevant here.

Robinson's Step I grievance is shown below.

> Name (print first, last): Albert Robinson
> Number: 603873
> Institution: URF E
> Lock Number: M201
> Date of Incident: 6-19-16
> Today's Date: 6-30-16
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? ON 6-19-16 I
> If none, explain why. Talked to C/o Killips Asking him to please pay me for 36 days for this pay period. And 3 days are from Horticulture, total of 39 days worked.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> C/o Killips wants to pay me only 34 days, when I worked 36 days. He states if I file this grievance there will be trouble for me. I don't care. I work hard on yard crew and I only make $1.14/DAY. I worked the following days May: 19-20-21-23-23-24-25-26-27-28-29-30-31
> June: 1-2-3-4-6-7-8-9-10-11-12-14-15-16-17-18
> The underlined days May 25-26-27 are days I worked Horticulture, Marty Ternion will pay me for those. What needs to be done is Officers need to Always use the Check-in log Everyday, that's never done. Killips says my overtime will be cut if I file this grievance, its not fair if he does that. The single underlined days are overtime. I cut grass on all those days. I just filed 2 grievances on Health Care on 6-15-16 and 3 days later my pay is docked. Killips says this has something to do with Classification, but I don't think so. Don't want to wait till August payroll to get my 2 missing days, I want it on July payroll.
> Grievant's Signature: Alt Ri

(*Id.*, PageID.294.)

10

In this grievance, Robinson named Defendant Killips at Step I with an incident date of June 19, 2016. Robinson complains that Killips had failed to pay him for each day that he worked during the pay period. The pay issue appears to be the primary issue raised. But Robinson also asserts that Killips did a poor job tracking work days, that Killips told him that his overtime would be cut if he filed a grievance and there would be trouble for him, and that his pay was cut possibly in retaliation for filing other grievances against health care. Robinson's Step I grievance does not mention Thompson and does not mention an equal protection claim.

The Step I grievance was denied with the explanation that Robinson was paid for each day that he worked on the yard crew. (ECF No. 42-2, PageID.295.)

Defendant Thompson responded to Robinson's Step I grievance. (*Id.*) Thompson's resolution of this grievance, which is dated July 5, 2016, is shown below.

**Step I Grievance Response**

| | |
|---|---|
| Grievance Number: | URF-16-01-273-2 C |
| Prisoner Name: | Robinson |
| Prisoner Number: | 602273 |

Prisoner ☒ was ☐ was NOT interviewed. GIVE REASON:

**SUMMARY OF COMPLAINT:**
Prisoner states that he was not paid for 2 days of work in the month of May.

**INVESTIGATION INFORMATION**
I spoke with C/O Killips and he stated that prisoner Robinson left his job on 5/25/16 to go to work in the green house. He said that those 2 days were the end of the pay period and that Robinson did not work on the days that he claims for him.

**APPLICABLE POLICY, PROCEDURE, ETC.**
05.01.100 Prisoner Grievance, 02.03.110 Discriminatory Harassment code of ethics and conduct employee. CSJ 362 Prisoner Program and Work Assignment Evaluation.

**SUMMARY**
Prisoner Robinson did work the month of May 15 days. He was not working as Yard Crew as of 5/25/16 so he does not owed any pay as a yard crew worker. This was explained to prisoner Robinson that he would be paid from his horticulture assignment. He was not satisfied and wanted the grievance sent to Step II. Not resolved.

| RESPONDENT NAME: | P. Thompson | TITLE: | Sergeant |
|---|---|---|---|
| RESPONDENT SIGNATURE: | SGT P [signature] | DATE: | 7/5/16 |

(*Id.*, PageID.295.) Thompson noted that he had interviewed both Robinson and Killips, and concluded that Robinson did not work the days for which he was requesting pay. (*Id.*)

Robinson appealed that decision on July 8, 2016. His Step II appeal is shown below.

> [Handwritten grievance form Step II appeal by Albert Robinson, #608873, URF E, Lock M201, Date of Incident 6-19-16, Today's Date 7-8-16. Reason for Appeal: What Thompson states in Step 1 Response is incorrect. I did go work for Horticulture for 3 days, not 2 like Thompson said. And it wasn't the end of the pay period. The pay period is from May 19 – June 18. Also I only worked 13 days in May and 16 days in June, totaling 29 days. I worked Horticulture May 25, 26, 27 and Marky transferred me back and I returned to yard crew on May 28. Killips never checks yard crew workers in with check in sheet. He claims he can remember who works and when. At the end of the pay period Killips only wants to pay me 22 days, regardless of overtime. I was threatened with a ticket and my pay being taken if I filed this grievance. My statement can be verified by yard crew worker Pelton #950674 who heard Killips threaten me with retaliation on the end of pay period. Thompson also threatened me with pay loss. On 7-1-16, I earned $33.36, I got paid $28.50. Because of previous grievances. Date Received by Step II Respondent: JUL 11 2016]

(*Id.*, PageID.292.) Robinson's appeal again listed an incident date of June 19. He focused on the disagreement over the number of days he worked, but did mention that Killips threatened him with a ticket. In addition, he asserted "Thompson also threatened me with pay loss."

URF Warden Woods wrote the Step II response, which is shown below.

13

STEP II GRIEVANCE RESPONSE FOR PRISONER: **ROBINSON 602273 M-201 (URF)**

Grievance **URF 1606 2387 02C**, has been reviewed.

Grievant claims that he is missing pay and overtime pay.

This Step II Respondent is supported by PD 05.02.110, Prisoner Work Assignment Pay and School Stipends states in part "All other prisoners assigned to work shall be paid at the appropriate rate identified in Attachment A, subject to the criteria set forth below. The pay rates are for full time assignments (i.e., six hours of work daily, excluding time for meals and breaks) unless indicated otherwise. Prisoners on less than a full time assignment shall be paid on a prorated basis".

The Step I Respondent found the grievant is not owed any additional pay.

This Step II Respondent interviewed the Classification Director who reviewed the grievant's payroll for May 19-June 18. Records show the prisoner worked 19 days in yard crew and 5 days in Horticulture (2 more than the grievant states). There was no overtime scheduled for yard crew workers during that pay period due to the dryness and lack of grass needing to be cut. The grievant was paid $28.50 which is for 25 days total and should have only been paid for 24. No violation of policy exists.

Based on the above finding(s), this grievance is denied.

_____  _____
Jeffrey Woods, Warden              Date

(*Id.*, PageID.293.) The Warden's response at Step II, which is dated July 20, again focused on the disagreement over the number of days worked. The Warden concluded that Robinson had actually been over-paid.

Robinson then filed a Step III appeal on July 26. His appeal is shown below.

| Respondent's Name (Print) | Respondent's Signature | Date | Date Returned to Grievant: |
|---|---|---|---|
| JEFFRCY WOODS, WARDEN | [signature] | 7/20/16 | 7-26-16 |

**STEP III** — Reason for Appeal: The calculations they used are wrong. Horticulture pays $1.34/day, I was paid $1.14/day for the horticulture days. Also am yard crew wasn't scheduled for overtime, we worked on my days off which were Saturday-Sunday, then after May 27 my days off were Sunday-Monday, I worked 26 days for killips and was only paid 19. I worked 3 days for Marty (Horticulture) totaling 29 days. killips and Thompson conspired, then retaliated when I wrote this grievance and I haven't worked since June 30, 2016. killips said if I come out to work overtime I will get a ticket. Pelton #450674 witnessed this. On July 4, at interview Sgt Thompson said I wont get overtime anymore because of grievances.

NOTE: Only a copy of this appeal and the response will be returned to you.

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION: White – Process to Step III; Green, Canary, Pink – Process to Step II; Goldenrod – Grievant

14

(*Id.*, PageID.293.)

The Step III grievance was denied. (ECF No. 42-2, PageID.291.) The denial is shown below.

**STEP III GRIEVANCE DECISION**

82223
2C

**To Prisoner:** Robinson  #: 602273
**Current Facility:**
**Grievance ID #:** URF-16-06-2387-02C
**Step III Received:** 8/3/2016

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

_____
**Richard D. Russell, Manager Grievance Section, Office of Legal Affairs**

**Date Mailed:**

NOV 17 2016

It is clear from the grievance documents that Robinson complained about an improper loss of pay during the May 19 to Jun 18, 2016 pay period. And, at Step I, which is dated June 20, 2016, he alleged a threat by Killips on June 19, 2016. Furthermore, at Step II, he alleged some threat by Thompson before July 5, 2016. Robinson says this is enough to show that he exhausted his remedies. (ECF No. 43, PageID.313.)

The undersigned respectfully disagrees with the assertion that Robinson has exhausted his administrative remedies for several reasons. First, it is clear that

15

Robinson did not raise an equal protection claim or present any facts that could arguably support an equal protection claim in **Grievance URF-16-06-2387-02c.** Robinson did not state in his grievance that Defendants discriminated against him or that he was treated differently from any other prisoner. These allegations arose for the first time in Robinson's complaint. Thus, the undersigned concludes that Robinson has not exhausted his equal protection claim.

Second, Robinson's grievance could not exhaust his remedies with respect to loss of overtime in July because he did not lose the overtime until after he filed the grievance. Robinson's grievance focuses on an incident occurring on June 19, 2016. (*See*, *supra*, Robinson's Step I grievance, dated June 20, and his Step II appeal, dated July 5.) Robinson's complaint, however, asserts that Defendants denied him overtime work in July based upon the filing of this June grievance. Thus, Robinson's complaint identifies an adverse action – denial of overtime in July – that is not mentioned in the grievance and occurred after the filing of the grievance. Robinson needed to file a grievance alleging that he was denied overtime in July in retaliation for the grievance he filed in June 2016. He did not do so. Thus, Robinson's claim that Defendants retaliated against him by denying him overtime in July 2016 is not exhausted.

The Court must nevertheless consider whether Robinson's references in his grievance documents to a threat by Killips on June 19, 2016, and a threat by Thompson before July 5, 2016, are sufficient to allow a retaliation claim to go forward based solely on those adverse actions. With respect to the alleged threat by Thompson

16

before July 5, this is not a close question. Robinson clearly did not comply with the requirements of PD 03.02.130 when he included a single sentence alleging a threat by Thompson in a Step II appeal of an earlier grievance he filed against Killips.

Robinson's reference in his Step I grievance to a threat by Killips on June 19 is a closer question. A review of Robinson's Step I grievance shows that the grievance contained a number of different allegations. He complained (1) that Killips should have paid him for 26 days of work, but only paid for 24 days, (2) that Killips did not do a good job tracking work days, and that he might have lost track of Robinson's work days, (3) that Killips threatened to take his overtime, and (4) that the lost wages were the result of two earlier grievances he filed against health care. (ECF No. 42-2, PageID.294.) The grievance form itself directs the prisoner to use a separate form for each issue being grieved. Robinson's inclusion of a brief reference to a threat by Killips in a Step I grievance that focuses primarily on lost wages does not suffice. His single grievance is really four grievances rolled into one. MDOC, quite reasonably, dealt with the primary issue. Although this issue is not as clear cut as the others in this case, the undersigned concludes that Robinson's reference in his Step I grievance to a threat by Killips did not suffice to exhaust his administrative remedies.

Robinson argues that *Ross v. Blake* concerns apply to the MDOC grievance process because the system is incapable of use and no ordinary prison can successfully navigate the grievance system. Robinson fails to support this conclusory claim with any factual argument. In fact, the record shows that Robinson has successfully

17

pursued many grievances through the MDOC Step III process. (ECF No. 42-2, PageID.232-255.)

Robinson also asserts that he should not have to exhaust his administrative grievance remedies because the MDOC administration thwarts inmates from using the process through machination, misrepresentation, or intimidation and the process is designed to trip up all but the most skillful prisoners. Again, Robinson has made no effort to factually support these arguments and to show that the MDOC grievance process is unavailable due to complexity or because administrators intimate, misrepresent, or put up roadblocks to allow successful navigation of the grievance process. Robinson has demonstrated that the MDOC grievance process is available and easy to use by inmates.

Robinson has not shown that his failure to exhaust his grievance remedies was due to the conduct of prison administrators or Defendants. The factual record shows that Robinson failed exhaust his administrative grievances by not including facts that could support an equal protection or discrimination claim in his exhausted grievance and by failing to file a grievance on his retaliation claims against Defendants after the alleged conduct occurred.

### VII. Recommendation

Therefore, the undersigned respectfully recommends that this Court GRANT Defendants' motion for summary judgment (ECF No. 41) due to Robinson's failure to exhaust his administrative grievance remedies and dismiss this case.

Dated: May 26, 2020                    /s/ *Maarten Vermaat*
                                                                  MAARTEN VERMAAT
                                                                  U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).